UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROVELL HENDERSON,

    Petitioner,

v.

THOMAS WINN, *Warden*,

    Respondent.

Case No. 14-cv-14591
Honorable Laurie J. Michelson

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]**

    After pleading guilty in a Michigan court, Rovell Henderson was sentenced to a minimum of 30 years in prison for second-degree murder. He asks this federal court to issue him a writ of habeas corpus. He makes several claims, including that his plea was not knowing and voluntary because he did not know (and his counsel did not tell him) that the 30-year minimum was above what Michigan's sentencing guidelines say his minimum sentence should be. As will be explained, this and Henderson's other claims do not warrant a writ of habeas corpus.

**I.**

**A.**

    On April 1, 2012, Ozzie Bullock was shot to death. Henderson was charged with the crime. (R. 7, PID 108.)

    At Henderson's state court preliminary examination, an officer read a statement that Henderson had given to the police the day Bullock was killed. According to the officer, Henderson told the police the following: "I stole some weed from [Bullock] before so today I stole some more weed and [he] confronted me about it. We started arguing and started fighting.

He pulled a gun on me so I got the gun from him and I thought I shot him in the arm and we were tussling." (R. 7, PID 134.) Henderson further explained, "The gun dropped on the floor after it hit the table and the gun went off again. I don't know what happened because both of our hands were on the gun so he could have shot himself. I don't know where the bullet went when the gun hit the floor. When I left, he was still breathing." (R. 7, PID 134.) Inconsistently, a forensic examiner at the preliminary examination testified that Bullock had been shot in the head five times. (R. 7, PID 120–21, 146.) Henderson was bound over for trial on charges of felony firearm, first-degree felony murder, and first-degree murder. (R. 7, PID 108, 119, 149–50.) In Michigan, a conviction of first-degree murder or first-degree felony murder carries with it a mandatory sentence of life without the possibility of parole. *See* Mich. Comp. Laws § 750.316(1).

So in March 2013, Henderson agreed to plead guilty to second-degree murder and felony firearm and receive a sentence of 30 to 60 years on the second-degree charge and two years on the firearm charge. (R. 7, PID 153.) The "Settlement Offer and Notice of Acceptance"—which Henderson and his counsel signed—reflects not an agreement for a "[g]uideline sentence" but instead a "[s]entence agreement" of "30 to 60 years + 2." (*Id.*)

A few days later, a plea hearing was held. The following is a key part of the plea colloquy:

> [THE PROSECUTOR]: [Henderson] has knowingly accepted the offer of the People, and I believe it would be to an amended count of second degree homicide plus one count of felony firearm with a sentence agreement of 30 to 60 years plus two for the felony firearm. . . .
>
> THE COURT: . . . You understand that by accepting the plea and sentence offer that has just been placed on the record . . . you would then be automatically convicted of murder in the second degree and felony firearm and *you're agreeing to do the 30 to 60 plus two sentence that has just been placed on the record*. You understand that?

[HENDERSON]: Yes.

(R. 7, PID 156–57 (emphasis added).) After some concern over, and discussion about, whether Henderson's admissions had established an adequate factual basis for his plea, the state trial court accepted Henderson's plea of guilty. (R. 7, PID 159–62.)

About two weeks later, Henderson was sentenced. After considerable discussion (and testimony) regarding one offense variable, the court asked Henderson's counsel if there were "any other quarrels or disagreements with the scoring of the guidelines." (R. 7, PID 178.) Henderson's counsel responded, "No, Judge. . . . His guidelines are correctly scored at 225 to 375 [months], which would equate [to] 18.75 years to 31.25 years on a homicide in the second degree. So his sentence is within the guidelines." (R. 7, PID 178.) (In Michigan, the guideline range is for the defendant's minimum sentence only; the maximum sentence is typically set by statute, and the time served between the minimum and maximum is determined by the parole board. *See* Mich. Comp. Laws § 769.8; *People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006), *abrogated on other grounds by Alleyne v. United States*, 570 U.S. 99 (2013).) Consistent with Henderson's plea agreement, the state trial court sentenced Henderson to 30 years minimum (60 years maximum) for second-degree murder and two years for felony firearm. (R. 7, PID 179.)

**B.**

About five months later, Henderson, with a new attorney, filed a motion to withdraw his guilty plea and to correct his presentence and sentencing-information reports.

In support of withdrawal, Henderson submitted an affidavit:

I, Rovelle Lamont Henderson, being first duly sworn, state: . . .
4. That I am not guilty of killing Mr. Bullock.
5. That Rodney Hawkins killed Mr. Bullock right in front of me.
6. That Rodney Hawkins also threatened to kill me.

7. That, upon information and belief, the police tested my clothing and found no blood or gunpowder.

8. That my confession was false, but I felt pressured to make it by the police telling me my fingerprints were on everything.

9. That I knew my fingerprints were in the house because I stayed there sometimes.

(R. 7, PID 189–90.)

As for correcting the presentence and sentencing-information reports, Henderson claimed that two prior-record variables and one offense variable were incorrectly scored. And once the three were corrected, Henderson argued, the guideline range for his minimum prison term for second-degree murder would not be the 18.75 to 31.25 years mentioned at sentencing but 15 to 25 years. (R. 7, PID 187.)

At a subsequent hearing on the motion, the prosecution agreed that the three variables were incorrectly scored and that Henderson's minimum guideline range for second-degree murder should be corrected to 15 to 25 years. (R. 7, PID 195.) But the prosecution strenuously argued that the guideline correction would not justify resentencing because Henderson had agreed to a specific sentence (30 to 60 years plus two years). (*See* R. 7, PID 198–200, 203.) The state trial court was not entirely convinced: "My concern is in an appeal setting, frankly if there could be an argument that Mr. [Henderson] had ineffective assistance of counsel because [his counsel] didn't crunch the numbers for what the guideline were. And if she, and if she had, she might have been able to convince [the prosecutor] to do 25 to 60 instead of 30 to 60. " (R. 7, PID 202.) The state trial court was also concerned that at the plea hearing, there was no discussion that the offer was above Henderson's (corrected) minimum guideline range. (R. 7, PID 203–04.) So the trial court (on its own motion) ordered a *Ginther* hearing. (R. 7, PID 207–08.)

At the ensuing *Ginther* hearing, the state trial court expressed a misunderstanding about what had occurred during the plea hearing: "Now, at the time we took the plea I probably said on

4

the record that his 30 year minimum was within sentencing guidelines." (R. 7, PID 216.) The prosecution interrupted: "Actually, Judge—Or did I?—you did not, and because the, the plea transcript, it was quite clear that it was for a specific sentence without regards to the guidelines." (R. 7, PID 216.) Even so, Henderson's former attorney (from his plea and sentencing) was called to testify. She also testified that the plea agreement was for a specific—not a guideline—sentence. (R. 7, PID 235–37.) As to the other issue raised by Henderson's motion—that Hawkins was the killer—Henderson's former counsel recalled that Henderson's mother had told her that someone had threatened Henderson. (R. 7, PID 226.) But she also testified that in investigating the case, Hawkins' name had never come up. (R. 7, PID 227.)

The state trial court ultimately ordered that the presentence and sentencing-information reports be corrected to reflect that the guideline range for his minimum sentence was 15 to 25 years (R. 7, PID 269), but denied Henderson's motion to withdraw his plea (*see* R. 7, PID 240–42, 270).

Henderson sought leave to appeal. Henderson's appellate counsel argued that Henderson should be allowed to withdraw his plea for two reasons: (1) his plea was not knowing and voluntary because he was not the killer, because his plea was coerced by the killer, and because police coerced his confession (R. 7, PID 257) and (2) his plea-and-sentencing attorney had been constitutionally ineffective by not informing him before he pled that a 30-year minimum for second-degree murder was above his minimum guideline range for that crime, by incorrectly telling the court at sentencing that 30 years was within his guideline range, and by failing to ensure that the prior-record and offense variables were correctly scored (R. 7, PID 261). Via a *pro per* motion, Henderson expressed that he did not want to withdraw his plea but only wanted to be resentenced in accordance with the corrected guideline range. (*See* R. 1, PID 42, 44; R. 7,

5

PID 282.) In January 2014, the Michigan Court of Appeals denied Henderson's request to appeal "for lack of merit in the grounds presented." (R. 7, PID 246.)

Henderson, without the assistance of counsel (but with the assistance of a prison legal-writing program), sought leave to appeal to the Michigan Supreme Court. Although the application for leave is not entirely clear, it appears that Henderson again expressed that he did not want to withdraw his plea. (*See* R. 7, PID 287–90.) He also stated that he was limiting his ineffective-assistance claim to his counsel's failure to object to variable scoring at sentencing. (R. 7, PID 290.) Henderson's primary ground for leave to appeal was that his sentence was inconsistent with the corrected guideline range. (R. 7, PID 292.) In June 2014, the Michigan Supreme Court denied leave; it was "not persuaded" that it should review "the questions presented." *People v. Henderson*, 847 N.W.2d 510, 510 (Mich. 2014).

## C.

In December 2014, Henderson filed the petition for a writ of habeas corpus that is now pending before this Court. (R. 1.) Having had a change of strategy, Henderson returns to the two claims his appellate counsel made along with the one he raised in his *pro per* filings.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA)—28 U.S.C. § 2254 in particular—"confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

### III.

Henderson asks this Court to grant him a writ of habeas corpus for three reasons: his plea was not knowing and voluntary (R. 1, PID 16), his trial counsel was constitutionally ineffective (R. 1, PID 17), and his sentence is inconsistent with the corrected guideline range (R. 1, PID 18).

### A.

Before examining these three claims, the Court briefly addresses a threshold issue: exhaustion. A prisoner is required to exhaust his state-court remedies for a claim before presenting that claim in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A). And that usually means fairly presenting the claim to the state appellate court and state supreme court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). As noted, in his application for leave to appeal to the Michigan Supreme Court, Henderson may have abandoned any claim that his plea was not knowing or voluntary. So, arguably at least, any such claim is unexhausted and not properly before this Court.

But even if that is the case, the Court will address all of Henderson's claims. It may choose this analytical route because, as will be explained, it finds that all of Henderson's claims lack merit. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (proceeding to the merits on unexhausted claim without deciding whether the claim could still be exhausted); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) ("In AEDPA, Congress similarly made clear that the

only circumstance under which mixed petitions may be considered by a district court is where the court determines that the petition must be denied in its entirety."); *see also* 28 U.S.C. § 2254(b)(2).

**B.**

Although spread across two different claims, Henderson says his plea was not knowing and voluntary for several reasons. He says that his plea is not valid because he was innocent and that the real killer was Hawkins, that Hawkins' threats forced him to take the fall by pleading guilty, and that police coerced his confession by claiming that his fingerprints were on everything. (R. 1, PID 16; R. 7, PID 189–90; R. 8, PID 318.) Henderson also says that his plea was not knowing and voluntary because, prior to his pleading guilty, he did not know, and his counsel did not inform him, that his 30-year minimum sentence for second-degree murder was above his guideline range for that crime. (R. 1, PID 17; R. 8, PID 322.)

Henderson presented all these claims to the Michigan Court of Appeals (R. 7, PID 257, 262), and that court denied leave to appeal "for lack of merit in the grounds presented" (R. 7, PID 246). That precise wording signifies an "on the merits" determination for purposes of § 2254(d), *Werth v. Bell*, 692 F.3d 486, 491, 493 (6th Cir. 2012), and this is so even though the Michigan Supreme Court was not persuaded to review the questions presented, *see Hynes v. Birkett*, 526 F. App'x 515, 519 (6th Cir. 2013). So AEDPA deference applies to Henderson's various claims about his unknowing or involuntary plea.

But to which state court decision does this Court defer? If it is the one-line decision from one of the state appellate courts, then this Court must hypothesize reasons for why the state appellate court found the plea knowing and voluntary and then test that hypothetical opinion against § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). But perhaps § 2254(d)

8

should apply to the state trial court's decision, which provided reasons for rejecting Henderson's assertions about his unknowing or involuntary plea. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Grueninger v. Dir., Virginia Dep't of Corr.*, 813 F.3d 517, 526 (4th Cir. 2016). The Supreme Court will likely provide guidance on this issue soon. *See Wilson v. Sellers*, 137 S. Ct. 1203 (2017). But to decide Henderson's petition this Court need not wait for the decision in *Sellers*. To the extent that this Court is required to come up with reasons, it may start that task by looking at what a state court actually said. And, as it turns out, Henderson has not shown that the state trial court's decision was contrary to or involved an unreasonable application of Supreme Court precedent or was based on an unreasonable fact finding. So, in this case, the *Ylst* path and the *Harrington* path lead to the same place.

**1.**

Regarding Henderson's claim that his plea was invalid because he was not the killer and because the real killer's threats forced him to plead, the state trial court stated:

> As far as his, his claim now that he's actually innocent, that just—that's a claim that just has no credibility or plausibility at all. Mr. Henderson not only gave a statement to the police essentially admitting the crime, and did it on video, he made a statement in his presentence report where he's sort of impliedly admitted the crime. . . .
>
> And, and then the, the claim now that he, that he was threatened at the time of the plea lacks plausibility also because if he was threatened then, he's still being threatened now. And so why . . . would he now claim and name somebody else as the real killer when the danger to him for doing so is frankly just as real now as it would have been at the time he pled. He was, after all, in custody at the time of his plea. So, you know, for a number of reasons that just doesn't resonate. . . .
>
> And he was under oath at the time of the plea. He was given every opportunity at the time of his plea and at the time of the sentence to raise some of the issues that he's raising now, and he didn't.

(R. 7, PID 241.) Essentially, the court credited what Henderson said under oath during his plea colloquy over what Henderson said after sentencing in his affidavit.

9

Henderson asserts that the state trial court's decision was contrary to or involved an unreasonable application of *Blackledge v. Allison*, 431 U.S. 63 (1977). (*See* R. 8, PID 319–23.) *Blackledge* says that a plea colloquy "is not invariably insurmountable" for there may be cases where, despite what is said on the record, the plea was the product of "misunderstanding, duress, or misrepresentation by others." *See* 431 U.S. at 75. But *Blackledge* also says, "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

Here, the trial court reasonably found that Henderson's situation was more like the second situation ("conclusory allegations unsupported by specifics") than the first (genuine "misunderstanding, duress, or misrepresentation by others"). Regarding Henderson's claim of innocence, it is true that the factual basis at the plea hearing did not firmly establish that Henderson shot Bullock in the head five times. (R. 7, PID 159–62.) On the other hand, Henderson's conclusory affidavit gave the state court no real reason to think Hawkins was the killer. And, as the state trial court stated, Henderson confessed to the police. True, Henderson says that the police coerced the statement. But that claim is not only conclusory, it is partly undermined by Henderson himself: he says that he "felt pressured" by the police telling him that his fingerprints "were on everything" while at the same time implying that this would not have been unexpected as he stayed at that house sometimes. And Henderson never moved to suppress what he said to the police. (*See* R. 7, PID 108–11.) Regarding Henderson's claim that Hawkins threatened him into taking the fall, at the plea hearing Henderson testified that no one had threatened him or "twisted [his] arm in any way to get [him] to give up [his] rights and plead guilty." (R. 7, PID 156.) Henderson further swore that he was pleading guilty "freely and

voluntarily." (R. 7, PID 157.) In all, the state trial court reasonably found Henderson's plea colloquy more credible than his conclusory after-the-fact claims of innocence and coercion.

Nor was the state trial court's decision "contrary to" *Blackledge*. In *Blackledge*, the defendant's attorney allegedly had told the defendant that he had talked with the prosecutor and judge and that, if the defendant pled guilty, he would get no more than 10 years; but, as it turned out, he got 17 to 21 years. 431 U.S. at 68–69. Those facts are not "materially indistinguishable," *Williams v. Taylor*, 529 U.S. 362, 413 (2000), from the facts of this case.

**2.**

Henderson also claims that his plea was not knowing and voluntary because he did not know, and his counsel did not tell him, that he was agreeing to a sentence (a minimum of 30 years on the second-degree murder charge) that was above what Michigan's sentencing guidelines say his minimum sentence should be (15 to 25 years). (R. 1, PID 17; R. 8, PID 328.)

The state trial court addressed this claim too. It said,

> If the issue is the fact that his plea and sentence agreement was on the minimum slightly above how we now calculate his sentencing guidelines, *that appears to be irrelevant*.
>
> The sentencing transcript does not disclose that the sentence agreement was arrived at as a result of calculating the guidelines or that Mr. Henderson only pled guilty and agreed to the sentence because he believed the sentence was within sentencing guidelines. If that had been the case, and if there had been a clear misrepresentation or misunderstanding that went to the heart of whether or not he was pleading guilty voluntarily, I would take a different view, but that, that is not what happened here.
>
> And, and the, the fact is that, of course, he got a huge charge reduction, a significant reduction from first degree premeditated murder, which if he'd been convicted of such crime, he never would of seen the light of day. So the fact that there was a sentence agreement which turns out now is slightly above the sentencing guidelines is of no moment. *Whether it was known at the time or not, it's just not a relevant point*. So there's no reason for me to set aside the plea on that basis.

(R. 7, PID 241 (emphases added).) In other words, the state trial court determined that Henderson accepted the 30-year minimum for second-degree murder in exchange for the dismissal of counts that imposed a sentence of life without the possibility of parole. Henderson did not, according to the state trial court, accept the offer because he thought the 30-year minimum was within his guideline range.

This was a factual determination by the state trial court and so to clear § 2254(d)'s bar to relief, Henderson must show that the determination was "unreasonable" "in light of the evidence presented in the State court proceeding." Henderson has not made the required showing. At the plea hearing, the prosecutor stated for the record that Henderson had "knowingly accepted the offer of the People" and that part of the offer was "a sentence agreement of 30 to 60 years." (R. 7, PID 156.) The state trial court then said to Henderson, "You understand that by accepting the plea and sentence offer that has just been placed on the record . . . you would then be automatically convicted of murder in the second degree and felony firearm *and you're agreeing to do the 30 to 60 plus two sentence that has just been placed on the record.*" (R. 7, PID 157 (emphasis added).) Henderson said, "Yes." (*Id.*) Critically, the word "guideline" was not uttered by anyone—defense counsel, prosecutor, or the court—at the plea hearing. This was entirely consistent with the notice of acceptance that Henderson signed prior to the plea. It too indicates that it was for a sentence agreement, not a guideline sentence. (R. 7, PID 153.) And, at the *Ginther* hearing, Henderson's counsel stated that it was her understanding that the plea deal was for a sentence of 30 to 60 years, not for a sentence within the guideline range. (R. 7, PID 235, 237.) In all, there is an ample factual basis for the state trial court's determination that Henderson's guideline for second-degree murder was not a material factor in his decision to accept the prosecution's offer and plead guilty. And that being the case, the state court

reasonably concluded that Henderson's plea was not unknowing because he did not know that a 30-year minimum was above his guideline range.

* * *

In sum, Henderson has not shown that the state courts rejected his claims that his plea was not knowing and voluntary in a manner that would surmount § 2254(d)'s bar to habeas corpus relief.

## C.

Henderson also asserts that his trial counsel was constitutionally ineffective in two ways. The first: counsel did not inform him, before accepting the plea offer or pleading guilty, that he was agreeing to a sentence above his minimum guideline range for second-degree murder. (R. 1, PID 17.) The second: at sentencing, counsel failed to object to the scoring of two prior-record variables and one offense variable (or otherwise ensure that they were scored correctly). (R. 1, PID 17.)

To establish an ineffective-assistance-of-counsel claim, Henderson must show that his trial counsel's performance was objectively unreasonable and, without counsel's errors, there is a "reasonable probability" that the outcome would have been different (going to trial or a lesser sentence, as the case may be). *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The state trial court found nothing unreasonable about Henderson's trial counsel's performance. At the start of its ruling it said, "First of all, although I guess I sort of initiated this inquiry of Ms. Diallo, I do not find that there was any faulty representation of, of Mr. Henderson during the course of the trial or the time of the plea." (R. 7, PID 240.) The court then went into a discussion about how Henderson's lack of knowledge of the guideline range did not materially

affect his decision to plead (the discussion quoted above). (R. 7, PID 240–42.) The trial court then bookended its ruling by returning to counsel's performance, "I think given the, the—really the just abundance of evidence stacked up against him in this case, that his lawyer actually did him a great service by getting a plea and sentence agreement that is considerably less than that which he was facing if he had gone to trial." (R. 7, PID 242.)

At least as to Henderson's first ineffective-assistance claim—the one about counsel failing to inform him that the sentence under the plea offer was above his guideline—this was an "on the merits" assessment of trial counsel's performance. This means § 2254(d) applies. And so the question for this Court is not "Was Henderson's counsel's performance deficient?" Instead, this Court answers this question: "Was the state trial court reasonable in finding that counsel's performance was not deficient?" *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable.").

The answer is "yes": the state trial court reasonably found that Henderson's counsel did not perform inadequately when she failed to advise Henderson prior to pleading that his 30-year minimum for second-degree murder was higher than his guidelines. Henderson's counsel testified at the *Ginther* hearing that it was her understanding that the plea deal was for a sentencing agreement and not a guideline sentence. And the notice of acceptance supports her testimony. Thus, the state trial court could have reasonably concluded that trial counsel reasonably thought that the guidelines were irrelevant given that the deal was to avoid a sentence of life in prison without the possibility of parole. (*See* R. 7, PID 236 ("[COUNSEL:] I was just concern[ed] about that life. L-I-F-E.").) While it may have been prudent for trial counsel to have informed Henderson that the 30-year minimum was above his guideline range, this Court cannot say that it was unreasonable for the state trial court to think that she did not have to.

It is not clear whether the state trial court addressed Henderson's other ineffective-assistance claim, the one about counsel's failure to ensure correct prior-record and offense variable scoring at sentencing, "on the merits" such that § 2254(d) applies. True, the claim was presented to the state trial court and that court found, as a general matter, counsel's performance was not deficient. *See Johnson v. Williams*, 568 U.S. 289, 301 (2013). But ambiguity arises from the fact that, at the start of the hearing, the prosecution stipulated that the three variables were incorrectly scored and agreed to correct the presentence and sentencing-information reports. (R. 7, PID 214–17.) And before getting to other issues, the state trial court signed an order to that effect. (R. 7, PID 217.) Thus, by the time of its ruling, whether counsel was deficient in failing to ensure correct scoring or whether that failure was prejudicial did not need to be addressed on the merits.

But even if the state trial court did not address this ineffective-assistance claim, it was presented to the Michigan Court of Appeals and that court rejected the claim "for lack of merit" (R. 7, PID 246), which, as noted, is an "on the merits" determination for purposes of § 2254(d), *Werth*, 692 F.3d at 491, 493. The Michigan Court of Appeals, though, did not draft an opinion. So this Court is tasked with coming up with one and then testing that hypothetical opinion against § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (providing where state court offers no opinion, § 2254(d) requires a federal court to come up with the "arguments or theories" that "could have supported[] the state court's decision" and then ask "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court).

One way that the Michigan Court of Appeals could have reached its decision to reject Henderson's *Strickland* claim is by finding no prejudice. *See Rayner v. Mills*, 685 F.3d 631, 637

15

(6th Cir. 2012) (providing that federal habeas courts are to presume that an unexplained decision addressed both prongs of *Strickland*). In particular, the Michigan Court of Appeals could have concluded that the sentencing court relied on the terms of the plea agreement—and not the guidelines—in sentencing Henderson. It would follow, the state court could have reasoned, that counsel's failure to ensure correct variable scoring had no effect on Henderson's sentence.

Assuming that the Michigan Court of Appeals reached its decision this way, this Court cannot say that the state appellate court's decision was contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). True, at sentencing, the state trial judge did ask about Henderson's guidelines and Henderson's counsel did tell the judge that the "guidelines [were] correctly scored" and that the 30-year minimum was "within the guidelines." (R. 7, PID 178.) But that could have been for the purposes of ensuring that the parole board had the right information—not for purposes of sentencing. (*See* R. 7, PID 198 (noting that sentencing reports should be amended for parole purposes).) Moreover, at the beginning of the sentencing hearing, Henderson's counsel urged the court to adopt the "sentence agreement." (R. 7, PID 167–68.) And right after Henderson's counsel stated that Henderson's sentence was "within the guidelines," the prosecutor interjected:

> [PROSECUTOR:] I would also note that even if the sentence were over the guidelines, this agreement was reached in order to avoid, on behalf of defense, the automatic life without parole sentence that would have resulted had he . . . been found guilty—
> 
> [THE COURT:] There was a significant—
> 
> [PROSECUTOR:] —as charged.
> 
> [THE COURT:] —charge reduction. Right.

(R. 7, PID 178–79.) Shortly after this exchange, the trial court sentenced Henderson to exactly what he had agreed to both in the notice of acceptance and on the record at the plea hearing: 30 to 60 years plus two. In all then, it appears that Henderson was sentenced based on his plea

16

deal—not his guidelines. And so even if counsel had ensured correct scoring (and thus ensured a correct guideline range) the Michigan Court of Appeals could have reasonably found that there is not a "reasonable probability" that Henderson would have received a different sentence. *See* 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 694.

In sum, this Court cannot grant Henderson habeas corpus relief on either of his ineffective-assistance claims because he has not cleared § 2254(d)'s bar to relief.

**D.**

Henderson's final claim is that his sentence for second-degree murder is based on "inaccurate information." He asserts that his sentence continues to rest on the guidelines as calculated at sentencing (18.75 to 31.25 years) instead of the guidelines as corrected post-sentencing (15 to 25 years). Henderson says that this is a violation of the Due Process Clause. (*See* R. 8, PID 333.)

Before turning to the merits of this claim, the Court again decides whether it should be viewed through AEDPA's deferential lens. Before the state trial court, Henderson did ask for his guidelines to be corrected. But it appears that he did not take the further step of arguing that the corrected guidelines meant that his sentence was based on inaccurate information. (R. 7, PID 186–87, 204; *but see* R. 7, PID 206.) That assertion apparently came later, in Henderson's *pro per* motion filed in the Michigan Court of Appeals. (R. 1, PID 44.) The Michigan Court of Appeals, albeit in an unexplained order, adjudicated the claim "on the merits." So § 2254(d) applies.

The applicable Supreme Court precedent here is *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "cases which provide the general rule that a violation of due process exists when a sentencing judge relies upon 'erroneous

17

information.'" *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005); *see also United States v. Jones*, 40 F. App'x 15, 17 (6th Cir. 2002) (citing *Townsend* and *Tucker* for the proposition that "[d]efendants have a due process right to a sentence based on accurate information").

The Michigan Court of Appeals did not unreasonably apply this rule. Even if Henderson's guideline range is now lower than what everyone thought it to be at sentencing, the Michigan Court of Appeals could have reasonably found that Henderson's sentence is not, as he claims, based on "inaccurate information." As discussed in addressing Henderson's ineffective-assistance claims, it would have been reasonable for the Michigan Court of Appeals to have found that the trial court sentenced Henderson based on his plea agreement, not his guidelines.

## IV.

For the foregoing reasons, the Court DENIES Henderson's petition for a writ of habeas corpus. But the Court finds that reasonable jurists could debate this Court's resolution of Henderson's claim that his counsel was constitutionally ineffective when she failed to advise Henderson prior to pleading that the offered 30-year minimum was higher than his guidelines for second-degree murder. Thus, the Court grants Henderson a certificate of appealability on that claim. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The Court denies Henderson a certificate of appealability on all other claims.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: March 12, 2018　　　　　　　　　United States District Court Judge